# PELTON GRAHAM LLC

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**TAYLOR B. GRAHAM, ESQ.**                                                                                                  JULY 23, 2018
GRAHAM@PELTONGRAHAM.COM

**VIA ECF**

Magistrate Judge Ramon E. Reyes, Jr.
United States District Courthouse
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    *Alipia Llontoy v. Martinez Cleaning Co. Inc., et al.*
                   **Civil Action No. 17–cv-07366 (AMD) (RER)**

Dear Judge Reyes:

      We represent the plaintiff in the above-referenced matter. This letter is submitted jointly with counsel for defendants pursuant to the Fair Labor Standards Act and in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012). Counsel for the parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A)[1] constitutes a fair and reasonable compromise of this matter and should be approved by the Court.

**I.**    **Introduction and Procedural History**

      Plaintiff Alipia Llontoy ("Llontoy" or the "Named Plaintiff") commenced this Action by filing a Collective and Class Action Complaint (Dkt. No. 1, the "Complaint") on behalf of herself and similarly situated employees of defendants Martinez Cleaning Co. Inc., Jorge Martinez and Elva Martinez (collectively hereinafter "Martinez Cleaning" or the "Defendants") on December 18, 2017 seeking unpaid overtime premium pay pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the New York Labor Law ("NYLL") § 650 *et seq.*, as well as damages for wage notice and wage statement violations pursuant to the NYLL. The Named Plaintiff worked as a cleaning employee for Defendants' janitorial and custodial services company.

      Counsel for both parties appeared for an initial conference before Your Honor on March 28, 2018, wherein the parties' proposed case management and scheduling order (Dkt. No. 13) was approved and the parties discussed an early exchange of documents to facilitate settlement discussions.

---

[1] At the time of this submission, the Defendants have not yet signed the Settlement Agreement. The parties will file a fully-executed Settlement Agreement as soon as Defendants sign, which we anticipate will be in the next day or two.

Hon. Ramon E. Reyes, Jr.
Joint Settlement Fairness Letter
Page **2** of **7**

Pursuant to the Court's direction, Plaintiff exchanged her Fed. R. Civ. P. 26 initial disclosures with Defendants on April 11, 2018 and Defendants exchanged certain informal document discovery with Plaintiff on April 12, 2018. Specifically, Defendants produced certain payroll records from Martinez Cleaning, as well as certain time records which were faxed to Defendants from Plaintiff each week reflecting the hours that she had worked at each of the Defendants' locations which Plaintiff cleaned. Soon after Defendants provided their payroll records to Plaintiff, the parties began to engage in settlement negotiations. Ultimately, the parties were able to reach a settlement of the case on an individual basis for the Named Plaintiff.

**II.     The Settlement Accounts for Litigation Risk and Compensates Plaintiff for Her Damages**

From the beginning of this litigation, the parties have had several major points of contention. First, and most importantly, the parties disputed whether or not Plaintiff was paid overtime premiums for the hours that she worked over forty (40) in a given workweek. Plaintiff alleged that she provided cleaning services for two (2) of Defendants' clients for a total of more than forty (40) hours each week throughout the majority of her employment with Defendants and, for her work, was paid at separate rates for each of the clients but was paid at straight-time rates for all hours worked. Defendants insisted and their records supported that Plaintiff was in fact paid an hourly rate at or above minimum wage with overtime premiums at one and one-half (1.5) times Plaintiff's regular hourly rate for all hours worked over forty (40) each week. Other than what she was told regarding her hourly rate(s) for the various clients of Defendants for whom she performed her cleaning work, Plaintiff had no documents or other evidence to refute the Defendants' payroll records demonstrating the overtime payments. Second, Plaintiff alleged that she was not provided with wage statements with her wage payments detailing, among other information required by NYLL § 195, her hourly rate(s) and hours worked for the pay period, on account of her being paid through direct deposit and not receiving a physical paystub each week. Defendants contended that, throughout her employment, Plaintiff had access to an online portal where her pay statements were maintained each week. Plaintiff alleges that she was never informed of an online portal and was never provided access to such a portal for her payroll information. Finally, Plaintiff alleged that she was not provided with a wage notice when she was hired or annually detailing her wage rate(s), as required by the NYLL. Defendants contend that she was hired prior to the wage notice law going into effect and that she entitled to annual wage notices.

While at trial Plaintiff would dispute the accuracy and completeness of the records that Defendants produced, Plaintiff recognizes that such documents could potentially limit the amount of damages Plaintiff could recover or eliminate the Plaintiff's FLSA claim completely if a factfinder credited Defendants' materials in their entirety.

Due to the fact-intensive nature of these inquiries, it is likely that substantive answers to these disputed issues would not be resolved until after significant additional formal discovery and motion practice, if not a trial. While discovery in this matter has just begun, Plaintiff would likely seek to conditionally certify a FLSA collective action and send notice to similarly situated employees of Defendants. Defendants would strongly oppose any such notice being issued to the

Hon. Ramon E. Reyes, Jr.
Joint Settlement Fairness Letter
Page **3** of **7**

Defendants' other employees. Based on these disputes, the parties engaged in good-faith, arm's-length settlement negotiations regarding not only Plaintiff's FLSA claims, but also her pendent state law claims.[2]

To aid in the settlement negotiations, Plaintiff created a damages analysis based on the Plaintiff's best-estimates of her hours worked and wages received from Defendants. The analysis, which assumes that Plaintiff was paid below minimum wage for a portion of her employment and was not paid overtime premiums for any hours worked over forty (40) in a given workweek, calculated the total estimated damages as $35,428.65, including liquidated damages, interest, as well as statutory damages for Plaintiff's claims under NYLL § 195, and approximately $9,837.00 in actual unpaid wages under the FLSA and NYLL.

The settlement amount (*i.e.*, $10,000) represents a substantial portion of the total damages – including more than the actual wages calculated from the Plaintiff's analysis – which would be the anticipated recovery if Plaintiff had received a favorable outcome at trial under both federal and state law. The parties believe this is a fair recovery based on the risks associated with establishing the calculated damages.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $10,000.00 (the "Settlement Amount"). Of that amount, $3,942.58 is payable to Plaintiff's counsel, representing $913.87 in expenses for counsel's costs for filing and service of the complaint, plus one-third (33.33%) of the Settlement Amount, after subtracting those expenses (*i.e.*, $3,028.71). The remaining $6,057.42 is payable directly to Plaintiff Llontoy (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage and hour release of claims for any claims arising before Plaintiff signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or the Settlement.

The agreement includes a mutual non-disparagement provision. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in an FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180

---

[2] Such claims, of course, may be waived by private agreement. *Amaya v. Garden City Irrigation, Inc.*, 2011 U.S. Dist. LEXIS 15316, at *4-5 (E.D.N.Y. Feb. 15, 2011).

HON. RAMON E. REYES, JR.
JOINT SETTLEMENT FAIRNESS LETTER
PAGE **4** OF **7**

n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds both the Plaintiff and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in an FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

As well, the mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain attorneys' fees in the event that they prevail.

The Second Circuit in *Cheeks* questioned the propriety of an FLSA settlement agreement in another case that included: (1) "a battery of highly restrictive confidentiality provisions" (2) an overbroad release that would waive both current and future claims and (3) a fee for plaintiffs' attorneys of "between 40 and 43.6 . . . without adequate documentation to support such a fee award." *Cheeks*, 796 F.3d at 206. The Settlement Agreement before this Court, however, (1) does not contain a restrictive confidentiality provision; (2) does not contain a release which is one-sided or is to be applied to future claims and (3) the Plaintiff's attorneys' fees are standard. Most importantly, and unlike the settlement agreement at issue in *Cheeks,* the Settlement Agreement is available to this Court to explore and to assess whether it was likely the "fair result of a balanced

4

negotiation, in which Plaintiffs were represented by able counsel."[3] Finally, this Court conducted and oversaw the settlement conference in this case, leading to an inference that the settlement was made as a result of arms-length bargaining.

### IV. Plaintiff's Attorney's Fees and Expenses

As set forth in the attached Affidavit of Taylor B. Graham, Esq. (Exhibit B), as of July 23, 2018 Plaintiff's counsel had spent more than 35 hours in prosecuting and settling this matter, resulting in a lodestar of $10,213.33. Plaintiff's counsel had spent $913.87 in actual litigation costs. The portion of the settlement amount that plaintiff seeks as attorney's fees (*i.e.*, $3,028.71) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which is less than the lodestar amount and is consistent with what was agreed upon between plaintiff and his counsel in his retainer agreement and the consent to become party plaintiff form filed with the Court.

The retainer agreement between Plaintiff and his counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs. The hourly billing rates utilized by plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour settlement in the Eastern District. *See Hall v. Prosource Techs., LLC*, 14-cv-2502(SIL), 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiff's counsel submits that the attorney's fees component of the settlement is fair and reasonable.

### V. The Court Should Find That the Settlement Is Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[4] Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of

---

[3] *Lola v. Skadden,* No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).

[4] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred. *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of arm's-length negotiations over several months. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation.

As explained above, the settlement represents a substantial portion of possible recovery under the FLSA and NYLL, including full recovery of alleged actual unpaid wages. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiff's ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution overseen and facilitated by this Court.

\* \* \* \* \*

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| | |
|---|---|
| Dated: New York, New York<br>July 23, 2018 | Dated: Ronkonkoma, New York<br>July 23, 2018 |
| **PELTON GRAHAM LLC** | **Law Office of Jose G. Santiago, Esq.** |
| By: */s/ Taylor B. Graham*<br>Taylor B. Graham, Esq. | By: */s/ Jose G. Santiago*<br>Jose G. Santiago, Esq. |

| | |
|---|---|
| 111 Broadway, Suite 1503 | 3275 Veterans Memorial Hwy., Suite 15 |
| New York, NY 10006 | Ronkonkoma, New York 11779 |
| Telephone: (212) 385-9700 | Telephone: (631) 618-4200 |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

Enclosure